UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CHIQUITA BROOKS-LASURE in her )<br>official capacity as Administrator of the )<br>Centers for Medicare & Medicaid Services; )<br>et al. )<br>)<br>Defendants. ) | Case No. 2:22-cv-00006-LGW-BWC |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

In accordance with this Court's June 28, 2022 order, Defendants submit this supplemental brief.[1] Summary judgment should be granted to Defendants because the Secretary of Health and Human Services (the Secretary) complied with all applicable laws and reasonably explained his decision to withdraw authorities for two components of Georgia's Section 1115 Medicaid demonstration project that he believed would not likely promote the statutory objectives of Medicaid. Should this Court conclude otherwise, remand without vacatur is the appropriate remedy. Vacatur would cause significant confusion and unnecessary expenditure of state and federal resources if the agency, upon addressing any deficiencies identified by this Court, ultimately decides on remand to maintain its withdrawal of any portion of Georgia's project.

---

[1] Upon conclusion of the motion hearing in this case on June 28, 2022, this Court stated that "the record shall remain open for ten (10) days for any additional submissions the parties wish to file on the merits, and the parties are DIRECTED to file briefs within ten (10) days addressing the propriety of remand without vacatur in the event the Court finds the agency action in this case was arbitrary, capricious, or contrary to law." Order, ECF No. 48.

**1.** As an initial matter, Defendants emphasize that the Secretary's decision is entitled to a high degree of deference, to the extent his decision is even judicially reviewable under the Administrative Procedure Act (APA). The statutory basis for demonstration projects like Georgia Pathways, 42 U.S.C. § 1315(a)(1), provides that "the Secretary *may* waive compliance" with portions of the Medicaid statute "to the extent and for the period *he finds necessary* to enable" a state to carry out a demonstration project. (emphasis supplied). The relevant regulations use similarly discretionary language, providing that the Secretary "*may* withdraw waivers . . . based on a finding that the demonstration project is not likely to achieve the statutory purposes." 42 C.F.R. § 431.420(d)(2). (emphasis added).

As Defendants have argued, this language squarely vests the discretion to decide the contours of a demonstration project—or indeed, whether such a project may proceed at all—in the Secretary alone. Defs. Br. at 10–12, ECF No. 23; Defs.' Reply Br. at 3–5, ECF No. 44. The use of "may" reinforces this conclusion. The Supreme Court recently reaffirmed that "the word 'may' *clearly* connotes discretion." *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020) 590 U.S. __, __ (2020) (slip op. at 10) (emphasis in original). This statutory language "plainly confers a discretionary authority." *Biden v. Texas*, No. 21-954, 2022 WL 2347211, at *9 (U.S. June 30, 2022) (emphasis in original). Elsewhere, Congress placed obligations on the Secretary with the word "shall"—*see, e.g.*, 42 U.S.C. § 1315(d)(2), (d)(3), (e)(5), (e)(7). But in the context of crafting waivers for demonstration projects, Congress chose to give the Secretary broad discretion, and specifically indicated this choice with the word "may." *Cf. Jama v. Immigration and Customs Enf't*, 543 U.S. 335, 346 (2005) (where "'may' is used in contraposition to the word 'shall'", the conclusion that 'may' grants discretion "is particularly apt.").

Because Congress "clearly" and "plainly" gave the Secretary broad discretion through the use of the word "may," any judicial review of the Secretary's exercise of this discretion must be—at minimum—highly deferential. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983). The "ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). An agency's determination may be overturned only if the Court finds the agency's reasoning "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vechicle Mfrs. Ass'n*, 463 U.S. at 43.

**2.** Particularly in light of the substantial deference owed, the Court should conclude that the Secretary, through the Administrator of the Centers for Medicare & Medicaid Services, acted reasonably and in accordance with the governing statutes and regulations in partially withdrawing authority for Georgia's Medicaid demonstration project. While Georgia's project as a whole proposed to extend Medicaid coverage to a new class of individuals, it contained two components the agency ultimately concluded would be infeasible and therefore would not promote coverage among the intended beneficiaries of the project. Withdrawal at 1–34, AR 2–35. The agency's thoroughly explained decision to withdraw approval for those two components was reasonable, is entitled to great deference, and should be upheld.

That Georgia now proposes to do away with the whole project in light of the partial withdrawal does not change the reasonableness of the agency's decision. As Defendants explained, Georgia did not raise this issue in its response to the agency's preliminary determination. Defs.' Br. at 23–24; Defs.' Reply Br. at 11. And in any event, a State cannot hold the agency hostage by threating to curtail Medicaid coverage unless it secures approval for other project components the Secretary believes would not promote the objectives of Medicaid. "[T]he entire Medicaid program is optional for states . . . . [This] argument must thus posit that any § 1115 program that maintains any coverage for any set of individuals promotes the objectives of the Medicaid Act as long as the state threatens to terminate all of Medicaid in the absence of waiver approval. Taken to its logical conclusion," such a position "makes little sense." *Stewart v. Azar*, 366 F. Supp. 3d 125, 153–54 (D.D.C. 2019), *appeals dismissed*, No.

3

19-5095 (D.C. Cir. Jan. 8, 2020); *see also* Defs.' Reply Br. at 11–12; Br. of Amici Curiae, ECF No 31, at 9.

Nor can the agency's partial withdrawal be considered "contrary to law" under Section 1115 of the Medicaid statute. Indeed, at the hearing, counsel for Plaintiffs agreed with this Court's suggestion that Plaintiffs had identified no "actual conflict" with section 1115 and that the thrust of their substantive claim against the agency is that the withdrawal was "arbitrary and capricious." Tr. at 20:18–21:7.

Moreover, the agency had authority to withdraw a part of the project under 42 C.F.R. § 431.420(d)(2). Contrary to Plaintiffs' contention, Section 431.420(d)(2) contains no timing requirement. Plaintiffs would have the Court read Section 431.420(d)(2) to say, "The Secretary may also withdraw waivers or expenditure authorities based on a finding[, after the project has been implemented,] that the demonstration project is not likely to achieve the statutory purposes." But the bracketed language is simply not in the regulatory text. And the Court may not insert language into a regulation. *Pub. Emps. for Env't Resp. v. Hopper*, 827 F.3d 1077, 1085 (D.C. Cir. 2016); *cf. Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012))).

Section 431.420(d)(1)'s inclusion of a timing requirement, i.e., "any time before the date of expiration" of the project, provides no basis to infer a post-implementation timing limitation in Section 431.420(d)(2). Section 431.420(d)(1)'s "any time before the date of expiration" requirement is neither pre- nor post-implementation; thus, there is no support for Plaintiffs' suggestion that Section

4

431.420(d)(2) must be limited to post-implementation actions.[2] The provisions simply govern different actions—suspensions and terminations versus withdrawal of waivers and expenditure authorities. Indeed, if the Court were to infer a timing limitation in Section 431.420(d)(2)—and it should not—a pre-implementation limitation is just as supportable as, if not more supportable than, a post-implementation limitation given that the assessment in Section 431.420(d)(2) is based on whether the project is "*likely* to achieve the statutory purposes," not whether it is actually doing so. *Id.* (emphasis added). This Court therefore should not entertain Plaintiffs' invitation to rewrite the regulation that clearly authorizes the agency action here.

The regulation also does not require notice and comment before the agency withdraws authority for any portion of a demonstration project. Section 431.420(d)(3) merely requires the agency to "detail any notice and appeal rights for the State for a termination, suspension or withdrawal of waivers or expenditure authorities" in the project approval's special terms and conditions (STCs), which the agency did. STC 10, AR 4177. Plaintiffs do not challenge the validity of Section 431.420(d), and thus the question of whether the regulation should have required a notice-and-comment period for a project withdrawal is not before this Court. *See, e.g.*, *Mobley v. Chatham Cnty., Ga.*, No. CV408-221, 2011 WL 1226223, at *2 (S.D. Ga. Mar. 9, 2011), *report and recommendation adopted*, No. CV408-221, 2011 WL 1212218 (S.D. Ga. Mar. 30, 2011). Rather, Plaintiffs merely rely on case law borrowed from the rulemaking context to argue that notice and comment is required to undo an agency action that initially went through the notice-and-comment process. *See* Pls.' Br. at 24–25, ECF No. 13; Pls.'

---

[2] As Defendants noted, Tr: 40:12–14, Section 431.420(d)(1) makes clear that the agency may withdraw "at any time," while Section 431.420(d)(2) states that the agency "may *also*" withdraw authority for a project upon finding that the project is "not likely to achieve the statutory purposes" of Medicaid. *Id.* (emphasis added). The "at any time" language from Section 431.420(d)(1) can be naturally read to carry over to the second basis for an agency's withdrawal of authorities. *Cf. Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

5

Reply Br. at 17–18, ECF No. 43. But as Defendants have explained, that case law is inapposite because unlike a repeal of a rule, no statute or regulation requires notice and comment to undo the agency's approval of a demonstration project. Defs.' Br. at 29–30; Defs.' Reply Br. at 16–18.

Finally, Plaintiffs' so-called "secondary" claims, Tr. 4:15, must all be rejected for lack of subject-matter jurisdiction, as improperly pleaded, or both. *See* Defs.' Br. at 30–36; Defs.' Reply Br. at 18–20. Moreover, Plaintiffs appear to no longer dispute that Georgia is free to walk away from the demonstration project if it decides not to engage in further discussions with the agency to come up with a mutually agreeable project. *See* Tr: 22:24–23:6. This concession undermines Plaintiffs' Count I and Spending Clause challenges, which are premised on the assumption that Georgia has been coerced to implement an unconditional Medicaid expansion.

**3.** If the Court nonetheless decides that the agency's decision was unlawful, remand without vacatur is the appropriate remedy. "[U]pon finding that the grounds for agency action are inadequate, a court may remand for the agency to do one of two things. First, the agency can offer a fuller explanation of the agency's reasoning at the time of the agency action. If it chooses this route, the agency may elaborate on its initial reasons for taking the action, but may not provide new ones. Alternatively, the agency can deal with the problem afresh by taking *new* agency action." *Biden v. Texas*, No. 21-954, 2022 WL 2347211, at \*12 (U.S. June 30, 2022) (cleaned up); *see also Dep't of Homeland Sec. v. Regents of Univ. of Cal.,* 591 U. S. ——, 140 S.Ct. 1891 (2020). Remand without vacatur allows courts reviewing agency actions to leave the action in place while the agency fixes the defect or defects in the original action identified by the court. To determine whether remand without vacatur is warranted, the Eleventh Circuit has adopted the D.C. Circuit's test, which analyzes "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015) (quoting *Allied–Signal, Inc.,* 988

6

F.2d 146, 150–51 (D.C. Cir. 2015)); *see also Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019).

Remand without vacatur is consistent with the "substantial deference that courts owe to the Secretary [of Health and Human Services] in the administration of such a 'complex statutory and regulatory regime.'" *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 366 F. Supp. 3d 32 (D.D.C. 2018) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993)), *aff'd*, 959 F.3d 1113 (D.C. Cir. 2020). On the first *Allied-Signal* factor, the agency can reevaluate Georgia's project in light of this Court's order and the agency's own predictive judgment and cure any defect in its explanation or chart a new course of action accordingly. *See CSX Transportation, Inc. v. STB*, 754 F.3d 1056, 1066 (D.C. Cir. 2014); *see also* 42 U.S.C. § 1315. On the second factor, vacatur would be significantly disruptive during the remand process. Georgia's project is currently not in effect. If Georgia's project goes into effect while the agency is still deliberating about whether to withdraw authority for a portion of the project and the agency ultimately decides to do so again for permissible reasons, the individuals targeted by the demonstration project will suffer confusion and changing requirements, while Georgia will have expended resources on aspects of the project that may ultimately be withdrawn.[3] *See Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist.*, No. CV-1877-ORL40DAB, 2016 WL 1317775, at *2 (M.D. Fla. Apr. 5, 2016) (remanding without vacatur "[i]n an effort to avoid 'the disruptive consequences of an interim change that may itself be changed'") (quoting *Black Warrior Riverkeeper*, 781 F.3d at 1290).

---

[3] Plaintiffs suggest that remand without vacatur would only be appropriate if this Court concludes that any deficiencies in the withdrawal are limited to procedural errors. *See* Tr. 52:2–9. But contrary to Plaintiffs' assertion, the *Allied-Signal* factors apply and the remedy of remand without vacatur is available even when a court finds substantive, unlawful errors in the agency's action. *See, e.g., Citrus HMA, LLC v. Becerra*, Civ. No. 20-cv-707, 2022 WL 1062990 (D.D.C. Apr. 8, 2022), *appeal filed* (June 14, 2022). Similarly, this Court may order remand without vacatur even if it concludes under the first *Allied-Signal* factor that the agency's errors were serious. *See, e.g., id.*; *see also Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020).

For the foregoing reasons, and for the reasons set forth in Defendants' prior briefs, summary judgment should be granted to Defendants. Alternatively, this Court should remand the challenged decision back to the Secretary without vacatur.

Dated: July 8, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director
Civil Division

/s/ O. Woelke Leithart
Idaho Bar No. 9257
Assistant United States Attorney
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia  31412
Telephone:  (912) 652-4422
E-mail: Woelke.Leithart@usdoj.gov

*Attorneys for Defendants*

/s/ *Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
HANNAH M. SOLOMON-STRAUSS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-0845
E-mail: vinita.b.andrapalliyal@usdoj.gov

**CERTIFICATE OF SERVICE**

Per Local Rule 5.1, Defendants certify that they effected service of this filing on all other parties to this action by filing it with the Court's electronic filing system.

/s/ *Vinita B. Andrapalliyal*
Vinita B. Andrapalliyal