UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA; GEORGIA DEPARTMENT OF COMMUNITY HEALTH,<br><br>　　　　　　　　　　　　PLAINTIFFS,<br><br>v.<br><br>CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; et al.,<br>　　　　　　　　　　　　DEFENDANTS. | CIVIL ACTION NO. 2:22-cv-6-LGW-BWC |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMEDY**

　　The Court ordered supplemental briefing to address "the propriety of remand without vacatur in the event the Court finds the agency action in this case was arbitrary, capricious, or contrary to law." Doc. 48. For the reasons outlined below, the Court should vacate CMS's letter purporting to rescind Georgia's authority to implement the qualifying activities and premium components of Georgia Pathways.

**VACATUR STANDARD**

　　The APA expressly requires that courts "*shall* hold unlawful and set aside agency action" that violates the APA or exceeds the agency's authority. 5 U.S.C. §706(2) (emphasis added). Courts have long interpreted this provision as authorizing courts to vacate unlawful agency actions. *See, e.g., Trans-Pac. Freight Conf. of Japan/Korea v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1251 n.72 (D.C. Cir. 1980). And, indeed, some judges have concluded that the APA's plain text mandates only vacatur and that no lesser remedy is available. *See Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., separate opinion) (explaining that the remedy of remand without vacatur "rests on thin air. No statute governing judicial review of agency action permits such a disposition and the controlling statute—5 U.S.C. §706(2)(A)—flatly prohibits it."); *accord Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir.

2002) (Sentelle, J., dissenting). But even in jurisdictions where courts have allowed agency actions to be remanded rather than vacated, remand "remains an exceptional remedy," *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020), and "vacatur is the ordinary APA remedy," *Black Warrior Riverkeeper, Inc. v. U.S. Army Corp of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (cleaned up); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("vacatur is the normal remedy").

## ARGUMENT

### I. Remand without vacatur is not available because CMS acted unlawfully.

The Eleventh Circuit has authorized remand without vacatur in narrow instances: only if it is not "clear that the agency's error incurably tainted the agency's decisionmaking process." *Black Warrior Riverkeeper*, 781 F.3d at 1290. Quintessential examples of such errors are where the agency relied on incomplete or inaccurate information, *id.* at 1275 (noting that the agency "admitted that it had underestimated the acreage of waters that would be affected by the projects authorized."), or where the agency failed to adequately explain its chosen course, *see, e.g.*, *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Allowing remand without vacatur in those cases may be appropriate because the error may be easy enough to cure on remand. This is no such case. Instead, CMS "erred to such an extent as to indicate that its ultimate decision was unlawful," and in these circumstances the Eleventh Circuit has not "decid[ed] whether remand without vacatur is permissible." *Black Warrior Riverkeeper*, 781 F.3d at 1290.

This Court shouldn't extend the "exceptional remedy" to this case because the Recission was unlawful for myriad reasons. Most immediately, the Recission used an arbitrary and unreasonable baseline for its entire analysis by isolating the qualifying hours and activities component from the rest of Pathways and treating it as a *restriction* on coverage; in fact, as CMS recognized repeatedly in the Approval, the Pathways program was a substantial *expansion* of Medicaid that would have provided coverage to approximately 64,000 individuals not currently eligible. *See* Approval (Ex. 2) at 3 ("the

only impacts on eligibility or enrollment will be to expand" Medicaid eligibility and coverage because Pathways "applies only to beneficiaries who previously were not eligible for Medicaid"). For the same reason, CMS acted arbitrarily in concluding that Pathways as originally structured would not advance the purposes of the Medicaid program under Section 1115 of the Act. And CMS has exceeded its authority under both Section 1115 and the STCs by seeking to unilaterally rescind the terms at the core of Pathways before a single person had enrolled in the program, before there had been any monitoring or evaluation of how the program was actually being implemented, and without any material change of circumstances since CMS's exhaustive vetting and approval of the program in October 2020.

These fundamental defects go far beyond just CMS relying on bad data or failing to explain its decision. They go to the very heart of whether CMS can issue the Recission at all. As a result, this is precisely the type of case the Eleventh Circuit left unaddressed in *Black Warrior Riverkeeper*. The Court should thus conclude that remand without vacatur is categorically unavailable to CMS.

**II.    The Court should vacate the Recission because its defects are serious and vacatur will not have disruptive consequences.**

The Court should still vacate the Recission even if remand without vacatur is available as a matter of discretion. In deciding whether to apply the exception, courts consider (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)"; and (2) "the disruptive consequences of an interim change that may itself be changed." *Black Warrior Riverkeeper*, 781 F.3d at 1290 (quoting *Allied-Signal*, 988 F.2d at 150-51). Neither factor favors CMS.

***Seriousness***. "The 'seriousness' of agency error turns in large part on 'how likely it is the agency will be able to justify its decision on remand.'" *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022). That analysis strongly counsels vacatur. Again, CMS's entire analysis in the Recission rested on a flawed and arbitrary premise because the sole impact of the Pathways program would be to expand coverage to individuals not currently eligible. This fundamental defect at the core of CMS's

reasoning is not fixable on remand; no amount of further consideration can convert a substantial expansion of coverage into a restriction of coverage. *See Sierra Club v. United States Army Corps of Engineers*, 909 F.3d 635, 655 (4th Cir. 2018) (assuming remand without vacatur was available but concluding it was inappropriate because the actions "were legally deficient, as they exceeded the Corps' statutory authority."); *Health Freedom Def. Fund, Inc. v. Biden*, 2022 WL 1134138, at *21 (M.D. Fla.) (holding that "the Mask Mandate exceeds the CDC's statutory authority and violates the APA" and vacating because "the CDC cannot correct the serious deficiencies on remand.").

In addition to the fundamental problems highlighted above, *see supra* 2-3, the Recission was arbitrary and capricious because it relied on a false equivalence between Georgia's program—which applied only to Georgians not currently eligible for Medicaid—and other states' programs that applied new conditions to existing enrollees. *See* Georgia Motion for Summary Judgment (Doc. 13) 23 ("MSJ"). The Recission also ignored CMS's exhaustive prior factual findings that led it to authorize Pathways in the first place and Georgia's significant reliance interests over the two-plus years that it developed, negotiated, and began to implement Pathways. *Id.* at 22-23, 24.

All of these defects independently render the Recission "unlawful" and are effectively unfixable on remand. In other words, the Recission is far from just "[a]n inadequately supported rule." *Allied*, 988 F.2d at 150. Yet even if it were somehow possible for CMS to cure these problems, vacatur would still be the correct remedy. A defect can still be deemed "serious" even if the court has "not foreclosed the possibility that the [agency] may develop a convincing rationale for readopting the same rule on remand." *Illinois Public Telecomms. Ass'n v. FCC*, 123 F.3d 693, 694 (D.C. Cir. 1997) (cleaned up); *cf. Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009) ("In the past we have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion.").

The same is true for CMS's failure to engage in notice-and-comment rulemaking. *See* Georgia MSJ 24-25. Courts have long recognized the importance of the notice-and-comment process. "The essential purpose of according … notice and comment opportunities is to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." *Batterton v. Marshall*, 648 F.2d 694, 703 (D.C. Cir. 1980). While CMS may suggest that it would reach the same outcome if the Court orders it to fix the notice-and-comment defect, that is not the proper standard. "When an agency bypasses a fundamental procedural step, the vacatur inquiry asks not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step." *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032, 1052 (D.C. Cir. 2021). That CMS cannot do, which is why "any agency that bypassed required notice and comment rulemaking obviously could not ordinarily keep in place a regulation while it completed that fundamental procedural prerequisite." *Id.*; *Daimler Trucks N. Am. LLC v. EPA.*, 737 F.3d 95, 103 (D.C. Cir. 2013) ("[T]he court typically vacates rules when an agency entirely fails to provide notice and comment.") (cleaned up)).

**Consequences**. The second prong is just as simple. "[D]isruptive consequences matter only insofar as the agency may be able to rehabilitate its rationale*." Long Island Power*, 27 F.4th at 717; *see also Comcast*, 579 F.3d at 9). Because CMS cannot rehabilitate the Recission on any remand, the Court need not consider the consequences of vacatur.

But there are no disruptive consequences in any event. This is not a case where "[t]he egg has been scrambled and there is no apparent way to restore the status quote ante." *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002). Nor would the Court be unwinding an ongoing program, such as an active oil pipeline where vacatur comes with "acknowledged … severe economic disruptions." *Standing Rock*, 985 F.3d at 1053 (vacating despite those disruptions). Rather, vacatur would merely allow Georgia to restart the process of implementing Pathways so it can begin providing

Medicaid benefits to new enrollees pursuant to the STCs. *See Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 179 (D.C. Cir. 2010) ("Neither will vacatur be disruptive of the agency's regulatory program. By its own terms, Rule 151A has not yet gone into effect.").[1]

Finally, Georgia has raised a host of defects in the Rescission, each of which independently render the Recission unlawful. If the Court reaches only one of those arguments and leaves the others for another day, then remand without vacatur is especially inappropriate. The existence of additional, unaddressed arguments for why CMS's Rescission was unlawful counsels in favor of vacatur. *See Cement Kiln Recycling Coal. v. EPA.*, 255 F.3d 855, 872 (D.C. Cir. 2001) ("Here … we have chosen not to reach the bulk of … petitioners' claims, and leaving the regulations in place during remand would ignore petitioners' potentially meritorious challenges.").[2]

In the alternative, if the Court enters judgment for Georgia on any of its claims but leaves open the possibility that CMS may be able to resuscitate its Recission in some other form, it should order CMS to take any further action on the program within three months. *See Black Warrior Riverkeeper*, 781 F.3d at 1291-92 (imposing a deadline for the agency to cure its defective action). Pathways was originally approved in October 2020 but has now been on hold for more than a year due to CMS's

---

[1] CMS may point to this Court's decision in the WOTUS litigation to support its argument that vacatur here would have "disruptive consequences." *See Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382-83 (S.D. Ga. 2019). The opposite is true. There, the Court preliminarily enjoined the agency action at the outset of the case (along with other courts that had done the same), and "administrative efforts [were] already underway to repeal and replace the WOTUS Rule with a new rule that abides by both statutes." *Id.* at 1382. The Court was thus concerned that "vacating the [enjoined] Rule may cause disruptive consequences to the ongoing administrative process." *Id.*; *see also id.* at 1383 n.18 (similar). So the Court chose "to allow the Agencies to continue their efforts to change the WOTUS Rule … while leaving this Court's existing preliminary injunction in place." *Id.* There is no preliminary injunction in place here and vacating the Rescission will not interfere with any ongoing administrative processes. *Wheeler* thus counsels in favor of vacatur.

[2] On the other hand, if the Court concludes that the Recission is unlawful only because CMS failed to give Georgia the procedures promised in the parties' January 4, 2021 agreement, *see* Georgia MSJ 25—and rejects all of Georgia's other arguments—then Georgia agrees that remand without vacatur is appropriate.

bait-and-switch. Even if the court does not vacate the Recission, it should order CMS to act expeditiously on remand to ensure a prompt decision about the future of this long-delayed program.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Rescission.

Respectfully submitted,
/s/ Jeffrey M. Harris

Chris Carr
  *Attorney General of Georgia*
Stephen Petrany
  *Solicitor General*
Office of the Georgia Attorney General
40 Capitol Square SW
Atlanta, GA 30334
(404) 458-3409

Jeffrey M. Harris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
*Special Assistant Attorneys General*
* admitted pro hac vice

G. Todd Carter, Esq.
Georgia Bar No: 113601

Paul M. Scott, Esq.
Georgia Bar No: 140960
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
P. O. Box 220
Brunswick, GA 31521-0220
Tel: 912-264-8544
Fax: 912-264-9667
Email: tcarter@brbcsw.com
pscott@brbcsw.com
*Local Counsel*

Dated: July 8, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion was electronically filed with the Clerk of Court using the CM/ECF system on July 8, 2022, thereby serving all counsel of record.

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris